United States District Court
Southern District of Texas
**ENTERED**
November 23, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RUBEN GONZALES, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00312 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Ruben Gonzales is an inmate in the Texas Department of Criminal Justice and is currently incarcerated at the Clements Unit in Amarillo, Texas. Gonzales filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 on December 21, 2020.[1] (D.E. 1). Gonzales challenges his conviction and sentence for aggravated sexual assault of a child, raising claims of trial court error, state error, and ineffective assistance of counsel. Both Respondent and Gonzales have filed motions for summary judgment. (D.E. 15, 23). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 15) be granted, Gonzales's motion for summary judgment (D.E. 23) be denied, and Gonzales's habeas corpus petition be dismissed in part and denied in part. It is further recommended that a Certificate of Appealability ("COA") be denied.

---

[1] Gonzales stated under penalty of perjury that he placed his petition in the prison mail system on December 21, 2020, and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998), and Rule 3, Rules Governing Section 2254 Cases (discussing the mailbox rule).

## I.    JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because Gonzales was convicted in Nueces County, Texas.  28 U.S.C. § 2254(a); 28 U.S.C. § 124(b)(6); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.    BACKGROUND

### a.    Petition and Claims

In his § 2254 petition, Gonzales raises ten claims, although they can be separated into two broad categories.  (D.E. 1 at 6-9).  First, Gonzales claims that the trial court abused its discretion by: (1) failing to administer the oath to prospective jurors prior to *voir dire*; (2) failing to arraign him on the charge; (3) depriving him of his right to testify; (4) having one judge handle the pre-trial hearings and substituting a different judge for the trial; (5) presiding over the trial without the case being properly assigned by the administrative judge; and (6) requiring Gonzales to be visibly shackled throughout the trial.  (*Id.*).  Second, he contends that the state erred by: (1) withholding discovery evidence until minutes prior to the start of trial; (2) making improper remarks during *voir dire*; (3) denying his right to a speedy trial; and (4) making improper remarks during closing arguments.  (*Id.* at 7-9).  In documents attached to his petition, Gonzales raises further claims that: (1) the state erred in several additional ways; (2) his trial counsels were ineffective; and (3) his appellate counsels were ineffective.  (D.E. 1-3 at 1-4; D.E. 1-4 at 1-2; D.E. 1-5 at 1; D.E. 1-6 at 1; D.E. 1-7 at 1-3).  However, as discussed further below, each of the claims raised in these attached documents are unexhausted and procedurally defaulted.

2

### b.    State Court Records

In December 2016, Gonzales was charged in an indictment with one count of aggravated sexual assault of a child under 14 years of age, in violation of Texas Penal Code § 22.021.  (D.E. 14-16 at 7-8).  The indictment also indicated that Gonzales was subject to an enhancement for being a repeat felony offender.  (*Id.*).

Gonzales was in federal custody at the time, so the state court requested that custody be temporarily transferred to the Nueces County Sheriff's Office for trial.  (*Id.* at 9).  However, Gonzales failed to appear for his arraignment.  (*Id.* at 14-15).

On May 23, 2017, Gonzales moved for a continuance of the trial.  (*Id.* at 58).  On July 6, 2017, Gonzales moved for a second continuance of the trial.  (*Id.* at 64-65).

*Voir dire* took place on August 22, 2017.  (D.E. 14-23 at 1-2).  There is no indication in the transcript that the prospective jurors were placed under oath.  While explaining the "on or about" language in the indictment, the prosecutor stated that "all that really matters about the date in the indictment, that the indictment reads is that the act, the crime occurred prior to the day that they were indicted.  So it happened before the paperwork was filed with the grand jury, and it's an on or about date for a lot of reasons."  (*Id.* at 19).

At the start of the trial, the state read the indictment and Gonzales pleaded not guilty.  (D.E. 14-24 at 6-7).

The minor victim, referred to in this memorandum as DR, testified that she was 10 years old.  (*Id.* at 17).  In January 2016, she was living with her uncle, Fred Ochoa.  (*Id.* at 18).  Her mother lived in the same apartment complex, and DR visited her sometimes.  Gonzales lived with DR's mom.  (*Id.*).  During one visit, Gonzales "got his finger and

3

started going like that (indicating) to my girl part" while her mother was in the shower. (*Id.* at 21).  It was underneath her underwear.  DR indicated with her finger what Gonzales did.  (*Id.*).  It was "outside" her body.  (*Id.* at 22).  Gonzales told her that it was "our little secret" and not to tell anybody.  (*Id.*).  This was the only time Gonzales ever touched her, although he also later showed her "a picture of his boy part" on his phone.  (*Id.* at 23).  After this, she wrote a letter to Ochoa about what Gonzales did.  (*Id.* at 24).[2]  On cross-examination, DR testified that she waited two months before telling anyone about what Gonzales did because she was scared.  (*Id.* at 30).

Sandra Pardo, a forensic nurse at the children's hospital, testified to the following. (*Id.* at 44).  While taking her medical history, DR reported that Gonzales "touched me in my middle part … with his finger.  He did his finger inside like this (patient points index finger and moves it back and forth motion) in and out."  (*Id.* at 49).  DR appeared upset while describing what happened.  (*Id.* at 52).  Pardo stated that "[p]enetration is anything considered however slight between the labia majora, which is the beginning part of the female sexual organ, so however slight," further explaining that "even if it's a millimeter between the labia majora, that would still be considered penetration."  (*Id.* at 55).

After the state rested its case, the court asked Gonzales's counsel if they were still contemplating whether Gonzales would testify.  (*Id.* at 62).  Counsel responded that "he likely will not testify."  (*Id.*).

_____

[2] A copy of the letter was introduced as evidence and is available at D.E. 14-27 on page 6.

Ochoa testified to the following.  (D.E. 14-25 at 48).  DR had lived with him for about five years.  (*Id.* at 49).  She left a letter in his room regarding Gonzales's actions.  (*Id.* at 54).  He talked to DR and she confirmed that the letter was true, so Ochoa called the police.  (*Id.* at 55).  Ochoa had been convicted twice for felony theft in the last ten years.  (*Id.* at 62).  DR received food stamps and Medicaid.  (*Id.* at 63).  Ochoa did not know the amount that DR received in food stamps because it was combined with his own food stamps.  (*Id.* at 64-65).  On cross-examination, Ochoa testified that he was not benefitting financially by taking care of DR.  (*Id.* at 65).

Carlos Flores testified to the following.  (*Id.* at 68).  DR lived with him from when she was three months old until she was seven years old.  (*Id.* at 70).  At that time, Ochoa picked her up and then never brought her back.  (*Id.* at 71).  Flores had known Ochoa his entire life and believed that he was not generally a truthful person.  (*Id.* at 73-74).

After Flores testified, the court prompted Gonzales's counsel for the next witness.  (*Id.* at 75).  Counsel responded: "Defense rests, Your Honor.  It won't be necessary to call any other witnesses."  (*Id.*).  During the jury charge, the court stated that a defendant may testify on his own behalf, but was not required to do so.  (*Id.* at 80).  The court noted that Gonzales had "elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations, or take it into consideration for any purpose whatsoever."  (*Id.*).

During closing arguments, the prosecutor stated children "trust us to protect them.  They trust us to make sure something doesn't happen to them, and she was failed in this

situation once.  And I ask you to consider all of the evidence, go back there and find him

guilty so that he is held responsible."  (*Id.* at 95).

The jury found Gonzales guilty.  (*Id.* at 97).

At the punishment phase, Gonzales stated: "I want to add on record that when I was

extradited by the Texas Prisoner Transportation Services to Nueces County Jail on April

27th of 2017, I have been in this courtroom numerous times on proceedings, and up to this

day, I've never been arraigned on this charge that I was found guilty of."  (D.E. 14-26 at

9).  The court sentenced him to 50 years' imprisonment.  (*Id.* at 12).

On direct appeal, Gonzales raised a single argument that the evidence was legally

insufficient to show that penetration occurred as required under the law.  (D.E. 14-9 at 21-

31).  The Thirteenth District Court of Appeals of Texas overruled his claim and affirmed

his conviction.  (D.E. 14-1 at 1-9).  Gonzales subsequently filed a petition for discretionary

review with the Texas Court of Criminal Appeals ("TCCA") raising several claims that the

Court of Appeals erred by concluding that there was sufficient evidence to support his

conviction.  (D.E. 14-13 at 6-10).  The TCCA refused his petition.  (D.E. 14-7 at 1).

Gonzales next filed an application for a writ of habeas corpus in state court under

Article 11.07 of the Texas Code of Criminal Procedure.  (D.E. 14-32 at 11-52).  As in his

§ 2254 petition, Gonzales raised 10 claims on the proper Article 11.07 form, and they are

the same as the 10 claims he included on his present § 2254 form.  (*Id.* at 16-34).  The

instructions on the form noted: "If your grounds and a brief summary of the facts have not

been presented on the application form, the Court will not consider your grounds.  A factual

summary that merely references an attached memorandum or another ground for relief will

6

not constitute a sufficient summary of the facts." (*Id.* at 15).  If a petitioner had more than four grounds, they could copy particular pages of the application form as many times as needed. (*Id.*).  Gonzales did this for grounds 5 through 10. (*Id.* at 24-34).  However, as in his current § 2254 petition, Gonzales also attached additional pages raising further claims that: (1) the state erred in several additional ways; (2) his trial counsels were ineffective; and (3) his appellate counsels were ineffective. (*Id.* at 40-49).

The state's response addressed only the 10 claims on the Article 11.07 form. (*Id.* at 65-71).  The trial court also addressed only these 10 claims and recommended that habeas relief be denied. (*Id.* at 75-76).  Specifically, the trial court stated that: (1) the record failed to show that the jury panel was not under oath during *voir dire* and, regardless, Gonzales did not object; (2) Gonzales entered a plea to the indictment and fully understood the charges against him, so his arraignment claim failed; (3) the state provided all discovery prior to trial; (4) Gonzales elected not to testify and was not deprived of the choice; (5) different judges may preside over the pretrial and trial stages of a case; (6) the prosecutor's remarks during *voir dire* were proper; (7) Gonzales was not visibly shackled; (8) there was no speedy trial violation because the case progressed in a reasonable amount of time and Gonzales moved for several continuances; and (9) the prosecutor's remarks during closing arguments were proper. (*Id.*).  The Texas Court of Criminal Appeals ("TCCA") denied the application without written order on the findings of the trial court and on the court's independent review of the record. (D.E. 14-31 at 1).

### III.  DISCUSSION

#### a.  *Standard of Review*

A § 2254 petition raising claims that were adjudicated on the merits in state court may not be granted unless the adjudication of the claim: (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).

 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted).  This is a difficult standard to meet.  *Id.* at 102-03.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Where a state court decides a prisoner's federal claim on the merits in a reasoned opinion, the federal court merely "reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Even summary rulings by state courts are afforded deference under § 2254(d), and in such cases, the relevant question is what arguments or theories could have supported the state court's decision. *Harrington*, 562 U.S. at 99, 102.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).  A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *Id.*  In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

*b.* *Exhaustion*

Respondent first argues that each of the claims Gonzales attached to his petition form are unexhausted and procedurally defaulted. (D.E. 15 at 9). Respondent notes that Gonzales raised them in attachments to his Article 11.07 application, but argues that this was insufficient to raise the claims under the applicable Texas rules. (*Id.* at 10-11). Moreover, Respondent argues that the claims are procedurally defaulted because, if Gonzales tried to raise them in state court now, they would be procedurally barred by the Texas abuse-of-the-writ doctrine. (*Id.* at 11-12). Finally, Respondent contends that Gonzales has not established cause or shown prejudice should the court fail to consider his claims. (*Id.* at 12).

Gonzales responds that while these claims are unexhausted, he should be allowed to submit them to the state court in an amended Article 11.07 application because, at the time that he filed his Article 11.07 application, the prison system was in lockdown due to the COVID-19 pandemic. (D.E. 23 at 1-2). Thus, he argues that he could not have gotten copies of the pages necessary to properly add additional claims to the Article 11.07 application. (*Id.* at 2).

Under the applicable federal law, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that … the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). A petitioner must "fairly present" the substance of his claim to

10

the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Further, he must present his claims before the state courts in a procedurally proper manner according to the rules of the state courts. *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). Under the applicable rules in Texas courts, all grounds of relief sought in an Article 11.07 application must be included on the proper form, and "[a]ny ground not raised on the form will not be considered." Tex. R. App. P. 73.1(c).

The exhaustion requirement is not jurisdictional. *Morris v. Dretke*, 413 F.3d 484, 490-91 (5th Cir. 2005). Nonetheless, a petitioner's failure to comply with the exhaustion requirement precludes federal court review of his claims. *Deters v. Collins*, 985 F.2d 789, 797 (5th Cir. 1993). Exceptions exist only where there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1)(B). A Texas petitioner may exhaust his state court remedies by filing either a petition for discretionary review or an application for habeas corpus relief with the TCCA. *Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990).

A procedural default occurs where a petitioner has failed to exhaust state remedies and the state court would now find the claim procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Under these circumstances, a federal court need not dismiss the claims to allow exhaustion. *Rocha v. Thaler*, 619 F.3d 387, 398 (5th Cir. 2010). Under Texas law, a court may not consider the merits of a subsequent application for a writ of habeas corpus unless the petitioner establishes: (a) that the new claims could not have been presented in a timely initial application or a previously filed application because the factual

11

or legal basis was unavailable at that time; or (b) but for a violation of the United States

Constitution, no rational juror could have found the applicant guilty beyond a reasonable

doubt. Tex. Code Crim. P. art. 11.07, sec. 4(a). Even if a claim is procedurally defaulted,

a federal court may consider the merits if the petitioner can demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or show that

a miscarriage of justice would result from the failure to consider the claim. *Coleman*, 501

U.S. at 750.

Here, Gonzales does not dispute that he failed to exhaust the claims he has attached

to his § 2254 petition. The claims are unexhausted because, by attaching the claims to his

Article 11.07 application form, he failed to present them in a procedurally proper manner

according to the rules of the Texas courts. *Carter*, 677 F.2d at 443; Tex. R. App. P. 73.1(c).

Moreover, Gonzales's claim is procedurally defaulted because the state court would now

find it procedurally barred if he attempted to raise it. *See* Tex. Code Crim. P. art. 11.07,

sec. 4(a). Gonzales attempts to show cause to overcome this default by contending that he

could not make copies of the appropriate pages due to prison restrictions in response to the

COVID-19 pandemic. However, his Article 11.07 application does include multiple copies

of the appropriate pages, as claims five through ten are all on the appropriate copied form

pages. (*See* D.E. 14-32 at 24-35).[3] Further, despite the clear instructions on the Article

11.07 application form, Gonzales did not indicate in his application that he could not make

---

[3] Pages 14 and 15 of the Article 11.07 application form, which are the blank pages that applicants are supposed to makes copies of in order to add more claims, repeat six times.

the necessary copies or otherwise indicate to the state court that he could not follow the procedural rules.  (*See* D.E. 14-32 at 15).  Under these circumstances, Gonzales has not shown cause for his procedural default.

       *c.*   *Trial Court Error*

Respondent next argues that Gonzales's claim that the trial court failed to administer the oath to prospective jurors prior to *voir dire* is procedurally barred because state court denied this claim under the Texas contemporaneous objection rule.  (D.E. 15 at 12-14).  As to Gonzales's other claims regarding the trial court, Respondent contends that: (1) Gonzales entered a plea to the indictment and understood the charges, so his failure-to-arraign claim fails; (2) the record shows that the trial court did not deprive him of his right to testify; (3) different judges may preside over different stages of the same case; and (4) as found by the state trial court, Gonzales was not visibly shackled.  (*Id.* at 15-17).

Gonzales responds that the transcript is clear that the trial court did not administer an oath to the prospective jurors prior to *voir dire*.  (D.E. 23 at 4-5).  Second, Gonzales reiterates that he was never arraigned.  (*Id.* at 5).  Third, he argues that the transcript is clear that the trial court never advised him of his right to testify and stated that Gonzales was not going to testify without conferring with either counsel or Gonzales.  (*Id.* at 7-8). Fourth, he reiterates that different judges handled his pre-trial hearings and trial, and that the trial judge was never assigned to preside over the trial.  (*Id.* at 8).  Fifth, he argues that he was shackled unnecessarily during trial and that the state has not established that the jury could not see this.  (*Id.* at 9).

A state defendant has no constitutional right to an errorless trial. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). Federal courts may only grant habeas relief when a trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause. *Id.* "The test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278-79 (5th Cir. 1985).

Further, when analyzing constitutional trial error on habeas review, courts must determine whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal citation omitted). Under this standard, a habeas petitioner must establish that the trial error resulted in actual prejudice. *Id.* However, this requirement is not a traditional burden of proof. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Instead, if a federal judge "is in grave doubt" about whether a trial error had a substantial and injurious effect, the error was not harmless. *Id.*

Texas courts presume that the jury was properly impaneled and sworn unless the issue was raised at the time or it otherwise affirmatively appears to the contrary from the record. *White v. State*, 629 S.W.2d 701, 704 (Tex. Crim. App. 1981). The Texas contemporaneous objection rule is an adequate and independent state ground that procedurally bars federal habeas review. *Styron v. Johnson*, 262 F.3d 438, 453-54 (5th Cir. 2001).

14

"The purpose of arraignment is to determine the identity and the plea of the person charged." *Richardson v. State*, 508 S.W.2d 380, 381 (Tex. Crim. App. 1974); Tex. Code of Crim. P. 26.02.  When the defendant's identity has been established and he has entered a plea, the purpose of arraignment has been fulfilled.  *Richardson*, 508 S.W.2d at 381-82.

"A criminal defendant has a constitutional right to testify in his own behalf, and this right is granted to the defendant personally and not to his counsel." *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999).  The waiver of this right must be knowing and voluntary.  *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).  The trial court "generally has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived the right voluntarily." *United States v. Brown*, 217 F.3d 247, 258 (5th Cir. 2000) (judgment vacated on other grounds by *Randle v. United States*, 531 U.S. 1136 (2001)).  This is because a defendant's right to testify is an important part of trial strategy, and the court's discussion may sway the defendant one way or the other.  *Id.*

In Texas, it is not improper for different judges to sit at different hearings in a case. *Woods v. State*, 569 S.W.2d 901, 903 (Tex. Crim. App. 1978).

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005).  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal

court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Here, Gonzales has not established that the trial court erred or abused its discretion as to any of his claims. First, as to whether the potential jurors were placed under oath for *voir dire*, the record does not indicate either way whether the potential jurors were put under oath. (*See generally* D.E. 14-23). However, Gonzales did not object at the time, and the Texas contemporaneous objection rule bars federal habeas review of this claim. *Styron*, 262 F.3d at 453-54. Second, as to the failure to arraign, Gonzales entered a plea to the charge and there was no question of identity, so the purpose of arraignment was fulfilled and there was no error in failing to arraign. *Richardson*, 508 S.W.2d at 381-82. Third, the record does not show that the trial court denied Gonzales his right to testify. After the state rested its case, the court asked counsel whether they were still deciding if Gonzales would testify, and counsel stated he likely would not testify. (D.E. 14-24 at 62). After Gonzales presented his own witnesses, counsel rested his case. (D.E. 14-25 at 75). Gonzales did not personally object in either instance. The trial court is not required to explain to a defendant that he has the right to testify, and the court did not indicate that Gonzales had elected not to testify until the jury instructions. (*Id.* at 80); *Brown*, 217 F.3d at 258. Fourth, it is not improper in Texas for different judges to sit at different hearings in a case. *Woods*, 569 S.W.2d at 903. Finally, as to being shackled during trial, it is unconstitutional to use physical restraints visible to the jury absent a specific trial court determination to the contrary. *Deck*, 544 U.S. at 629. However, there is no evidence in the trial record that Gonzales was visibly shackled, and the trial court indicated that he was not when it

recommended denying his Article 11.07 application.  (D.E. 14-32 at 75).  The only evidence to the contrary is Gonzales's own statement, which is insufficient.  *Ross*, 694 F.2d at 1011.

     *c.*   *State Error*

Finally, Respondent argues that Gonzales has not shown that the state erred at trial. As to the late delivery of discovery materials, Respondent contends that Gonzales has not alleged what evidence was suppressed or how it was material.  (D.E. 15 at 19-20).  As to improper comments made during *voir dire* and closing arguments, Respondent argues that the state's arguments were not improper and, regardless, Gonzales has not made the required showing that, but for those remarks, he would not have been convicted.  (*Id.* at 20-21).  Finally, Respondent asserts that Gonzales received a speedy trial where his trial took place less than a year after the indictment.  (*Id.* at 21-22).

Gonzales responds that the state withheld evidence until the last moment despite multiple requests that discovery be turned over.  (D.E. 23 at 5-6).  He argues that some of the evidence withheld was the 911 call, which he contends would have proven that the outcry witness was not credible and lied during trial.  (*Id.* at 6-7).  Second, he argues that the prosecutor improperly guaranteed to the prospective jurors that he committed the crime when she said the allegation "did happen before it (case) was taken to the grand jury."  (*Id.* at 8-9).  Third, Gonzales contends that he could have had a trial within 120 to 150 days of the indictment, but he was in federal custody at the time of the indictment and there were delays in appointing him counsel and in making his first state court appearance.  (*Id.* at 10-11).  Finally, Gonzales asserts that the state stated during closing arguments that the victim

"ha[d] been failed before," which improperly implied that the victim had been through the legal system previously with a similar complaint.  (*Id.* at 11-12).

The prosecution must provide evidence favorable to the accused upon request. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The failure to do so is a violation of due process if the evidence is material to guilt or punishment.  *Id.*  This includes evidence that affects the credibility of a witness.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  To succeed on a *Brady* claim, a defendant must show that the evidentiary suppression undermines confidence in the outcome of the trial.  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

On a claim that the prosecution made an improper argument, the appropriate standard of review is the "narrow one of due process, and not the broad exercise of supervisory power."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  The prosecutor's remarks must be more than merely undesirable or even "universally condemned," they must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.*  The petitioner must show that the comments rendered the trial fundamentally unfair, such that there is a reasonable probability that the verdict might have been different without them.  *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Courts use a balancing test to determine whether a defendant's right to a speedy trial has been violated.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Relevant factors to consider when conducting this test include: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  *Id.*  The length of the delay is a threshold consideration in reviewing speedy trial claims, and the starting point

for determining this time period is the first of either the arrest or indictment. *Gray v. King*, 724 F.2d 1199, 1202 (5th Cir. 1984). Unless the length of delay is presumptively prejudicial, a court need not consider the other factors. *Id.* Whether the delay is presumptively prejudicial depends on the facts of the specific case, including the complexity of the case, the gravity of the alleged crime, and the manner of proof. *Id.* "Absent extreme prejudice or a showing of willfulness by the prosecution to delay the trial in order to hamper the defense, … a delay of less than one year is not sufficient to trigger an examination of the *Barker* factors." *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994).

Here, Gonzales has not established that the state erred at trial. First, as to his claim that the state withheld evidence until minutes before the trial, Gonzales has not established a viable *Brady* claim because he has not shown what this evidence was or that it was material to guilt or punishment. *Brady*, 373 U.S. at 87. Gonzales indicates that the evidence would have impacted the credibility of Ochoa, but he does not indicate how or meet his burden of showing that any evidentiary suppression would undermine confidence in the outcome of the trial. (D.E. 23 at 6-7); *Kyles*, 514 U.S. at 434. Second, the prosecutor's remarks during *voir dire* were not improper. The prosecutor stated that "the crime occurred prior to the day that they were indicted" in the context of explaining the "on or about" language in the indictment. (D.E. 14-23 at 19). She did not guarantee to the jury that Gonzales was guilty, but rather stated in a general sense the timeline necessary to bring charges in an indictment. Similarly, the prosecutor's remarks during closing arguments were not improper. The prosecutor stated that children expect adults to protect them and that DR "was failed in this situation once," then asked the jury to consider all the

evidence and find Gonzales guilty so he would be held responsible.  (D.E. 14-25 at 95).  In context, the prosecutor was referring to the incident at issue in this trial, and there was no evidence in the record of DR being failed any other time.

Finally, Gonzales has not established that he was denied his right to a speedy trial. Gonzales was indicted in December 2016, and his case went to trial in August 2017.  (D.E. 14-16 at 7-8; D.E. 14-23 at 1).  Gonzales does not argue for a different starting point other than the date of the indictment.  This is less than a one-year delay, which is insufficient to trigger an examination of the other *Barker* factors absent a showing of extreme prejudice or willful delay by the prosecution to hamper the defense.  *Cowart*, 16 F.3d at 647. Gonzales has not established that he suffered extreme prejudice from this delay, and the record does not show a willful delay by the prosecution.  Indeed, the record shows that Gonzales moved for multiple continuances.  (D.E. 14-16 at 58, 64-65).  Under these circumstances, Gonzales has not established that his speedy trial rights were violated.

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Gonzales has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).  "A

petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Where a claim is dismissed on a procedural ground, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, it is recommended that some claims be dismissed on procedural grounds and some on the merits. Reasonable jurists would not find it debatable that Gonzales's attached claims are unexhausted and procedurally barred. Nor would jurists of reason debate denial of habeas relief on the merits of the remaining claims. Therefore, it is further recommended that any request for a COA be denied.

## V.    RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 15) be GRANTED, Gonzales's motion for summary judgment (D.E. 23) be DENIED, and Gonzales's § 2254 petition be DISMISSED in part as unexhausted and DENIED in part. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted on November 23, 2021.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).